UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20989-Altman

UNITED STATES OF AMERICA

v.

EDGAR TORRES,

Defendant.
_____/

## MEMORANDUM IN AID OF SENTENCING

The defendant, Edgar Torres, by and through undersigned counsel, files his Memorandum in Aid of Sentencing as follows:

### Background

On June 24, 2019, Mr. Torres pleaded guilty to count one of the indictment charging him with a conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. Mr. Torres agrees with the factual proffer presented by the government and freely admits that he assisted his codefendants in their scheme to divert products and, later, sold diverted products himself. He has accepted responsibility for his misconduct by immediately offering his complete and total cooperation to the government.

Although the United States Sentencing Guidelines are no longer mandatory, *see* discussion *infra*, the court must still consult the Guidelines and take them into account when sentencing. *United States v. Booker*, 125 S. Ct. 738 (2005). In that regard, Mr. Torres agrees that the PSI's total guideline calculation of 24 is accurate.

1

## Mr. Torres' Cooperation

Mr. Torres is a party to a plea and cooperation agreement with the government. Since the time that the instant charges were brought, Mr. Torres has met with the prosecutors and agents on multiple occasions and has been debriefed for many hours over a period of several days about his knowledge in this matter. Mr. Torres also furnished documentary backup to support his testimony and provided details, some of which the government was not aware. Mr. Torres was candid and truthful throughout his debriefings. Finally, Mr. Torres testified truthfully at the trial of his codefendants.

Pursuant to the plea and cooperation agreement, the government will evaluate Mr. Torres' cooperation and, if warranted, will file a USSG 5K1.1 downward departure motion on his behalf. It is expected that the government will detail for the court the entire nature and extent of Mr. Torres' cooperation in a downward departure motion.

## The Factors Set Forth In 18 U.S.C. § 3553(a) Support a Lenient Sentence

Even absent the anticipated government filing of a 5K1.1 downward departure motion, the factors in 18 U.S.C. § 3553(a) support a lenient sentence. Under the Supreme Court's ruling in *United States v. Booker, supra*, while the court must still consider the guideline range, that range is only one of several factors now to be considered. Following *Booker*, the court must also accord significant weight to the factors set forth in 18 U.S.C. § 3553(a).

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

We submit that applying the factors set forth in Section 3553(a)(2) to Mr. Torres should also result is a sentence well below his guideline level. For example, while not downplaying the seriousness of the offense to which Mr. Torres pleaded guilty, it is mitigated in significant degree by Mr. Torres' immediate acceptance of responsibility and cooperation with the government. Because the law encourages sentencing reductions based on cooperation, a reduction below the current guideline level will not reduce "respect for the law." 18 U.S.C. § 3553(a)(2)(A). In addition, based in part on the on the collateral consequences that have already befallen – and will continue to befall -- Mr. Torres based on this conviction (including but not limited to the loss of his business and his inability to obtain new employment due to his health), a larger reduction will still plainly "provide just punishment for the offense." Id. And, given the probability that incarceration will be imposed, a lesser sentence will continue to "afford adequate deterrence," while at the same time continuing to promote cooperation with the government. Id. at § 3553(a)(2)(B).

Nor is it likely that Mr. Torres will ever repeat his mistake. As both the PSI and the letters written to the court attest, with the exception of this offense and the aberrant decades old money laundering conviction, Mr. Torres' entire background is as a law abiding citizen and devoted family man who provides emotional and financial support to family. He has most assuredly learned his lesson. As such, we submit that the public needs no protection from further crimes. Id. at § 3553(a)(1) and (2)(C).[1] In addition, because the court is no longer bound by the sentencing guidelines, the types of sentences available have little significance. Id. at § 3553(a)(3). Moreover, because there is no strict yardstick by which sentences are imposed in the cases of cooperating individuals, a greater reduction will not cause a sentencing disparity among defendants with similar records who have been found guilty of similar conduct. Id. at § 3553(a)(6). The court should also take into consideration the medical care Mr. Torres will need based on the information contained in Paragraphs 81 through 88 of the Presentence Report. Id. at § 3553(a)(2)(D).

## **Mr. Torres Is a Good and Decent Person, Deserving of Leniency**

The record is clear that Mr. Torres is a good and decent person who made a bad decision which is highly unlikely to be repeated. A look at Mr. Torres' entire life, during which he has consistently distinguished himself as an outstanding person and an asset to his community, will amply demonstrate this fact. Attached as exhibits are letters from people who have known Mr. Torres throughout his life. These letters provide substantial insight into Mr. Torres' character and attest to his integrity and moral soundness. Together,

---

[1] We submit that the need for educational or vocational training, or other correctional treatment are not issues in this case. Id. at § 3553(a)(2)(D).

these letters paint a picture of an honest, generous, hard-working and widely admired man who is worthy of this court's leniency.

An example is from Mr. Torres' sister **Vivian Torres**. She knows her brother as well as anyone and describes him as ". . . an honest and fair person who would not intentionally hurt anyone. He has been an exemplary member of the community, being respectful of neighbors and providing help to those in need." In her letter to the court, Vivian Torres cites examples of Mr. Torres' generosity and compassion for others. She goes on to describe her brother's failing health and asks the court "to be lenient with his sentencing and consider house arrest as an alternative to incarceration. House arrest would serve the purpose of punishment without being unduly harsh." See letter from Vivian R. Torres, attached hereto as exhibit "A."

**Teresa Castellano** is Mr. Torres' cousin by marriage who grew up together. They have been close all of their lives. She describes her cousin as a "very honest and loving individual" who goes out of his way to help. When he got married, "he was always a loving and devoted husband." Ms. Castellano asks the court "to be as lenient as possible with my cousin Edgar." See letter from Teresa Castellano, attached hereto as exhibit "B."

**Sylvia Renee Dukes** has been in a relationship with Edgar A. Torres for 2 ½ years and has lived with him for 2 years. She is employed as General Assistant School Food Service Manager for the Columbia County School District in Florida. She describes Edgar as "an easy going, kind and humble gentleman. He would give the shirt off his back to help anyone in need."

> I have seen this myself time and again as he has helped folks get back on their feet in times of need, myself included. I have seen him drop

everything to help his elderly neighbor when she needed something done and would do the same for anyone else who asked for his help.

She urges the court "to be as lenient as possible with Edgar. . . . See letter from Sylvia Renee Dukes, attached hereto as exhibit "C."

**Leonardo Sediles** has worked for Mr. Torres for almost 30 years. During that time he has been able to observe Mr. Torres both personally and professionally. He has the utmost respect for Mr. Torres professionally and, " [o]n a personal level as my employer Edgar A. Torres has helped me many times before."

> One that stands out the most to me and continues to do so is with my wife when she became ill. Edgar A. Torres demonstrated empathy and was always present in my needs. He works around my schedule so I can attend my wife's needs such as going to doctors appointment with her due to the fact she's paraplegic.

Mr. Sediles writes that "[w]e all know that we are imperfect human beings but we can also all learn from our mistakes and we all deserve mercy." Mr. Sediles asks the court for leniency on behalf of his friend and employer. See letter from Leonardo Sediles, attached hereto as exhibit "D."

**Kimmy and Michael Clements** have known Mr. Torres for decades. Their families lived just a few houses away from one another when Mr. Torres lived in Miami and they became good friends over the years. They know Mr. Torres to be a "very hard working, man who always put his family before anything." He was there for the Clements when Mr. Clements was diagnosed with a medical condition. They go on to describe Mr. Torres' selflessness:

> If you need something and Ed had it, he would lend it to you or give it to you. Ed always had a helping hand for anyone he saw who needed one. He always gives and never asks for anything in return.

6

They know Mr. Torres to be a "quite, gentle and very, very good hearted man." See letter from Kimmy and Michael Clements, attached hereto as exhibit "E."

**Edgar A. Torres III**, Mr. Torres' 28 year old son, writes to the court with a "heavy heart." He has been employed by Lemare Transport, his father's company, for the past 9 years. Throughout his employment, he has "observed nothing but generosity, gratitude and respect in the way [Mr. Torres] has treated me, my fellow employees as well as Lemare Transport's long time customers." He describes his father as "a kind and caring man who devotes himself to the people that surround him, whether it be with advice or opinion his words stem from the best of intentions. He has always been there for me when I've needed him most; financially and fatherly. " "His friends and family love him very much." Mr. Torres' son asks the court to take his words into consideration when considering an appropriate sentence. See letter from Edgar A. Torres III, attached hereto as exhibit "F."

Even Mr. Torres' ex-wife supports and admires him. **Beatrice Gerardin Torres** was married to Mr. Torres until their divorce in 2016. They had three children together: Corinne 30 years old, Eddy 28 years old and Cedric 24 years old. According to Mrs. Torres:

> Edgar was always a good father to my children. He always had and will always have their best interest in mind. Edgar is gentle and devoted. He is a hard working individual and he would never do anything to intentionally hurt anybody. He has done his best to make an honest living and remaining humble while doing so. He demonstrated strong family values and made an utmost effort to be a proper example for his children.

Mrs. Torres describes some of Mr. Torres' medical challenges. According to her, Mr. Torres "does not deserve a harsh sentence because this will worsen his health conditions and will cause deep sorrow and pain to his children who know their father as a respectful

7

and caring individual. " Mrs. Torres appeals to the court on behalf of her ex-husband. See letter from Beatrice Gerardin Torres, attached hereto as exhibit "G."

Numerous others wrote on Mr. Torres' behalf to give the court a deeper understanding of Mr. Torres' background, history, and character:

- See letter from **Andrew Solis**, a Texas attorney and second cousin to Mr. Torres attached hereto as exhibit 'H." ("Mr. Torres is a good and decent person. I beg this court to exercise leniency in its sentencing, and allow him to serve as much time as possible outside of confinement. I wholly believe Mr. Torres will comply with any requirements or conditions of probation. Mr. Torres is not a danger to the community and the majority of his family is in South and Central Florida").

- See letter from **Belford Vivas Rivera**, Mr. Torres' cousin, attached hereto as exhibit "I." ("His genuine, heartfelt determination to be present to protect his family and family values is second to none").

- See letter from **Cedric Voillaume Torres**, Mr. Torres' son, attached hereto as exhibit "J." ("While raising my siblings and I, he has been a role model of good values and actions and has always been around to support us").

- See letter from **Corinne Torres**, Mr. Torres' daughter and a French language Public School Teacher, attached hereto as exhibit "K."

- See letter from **Lucy Cheng**, who has known Mr. Torres for more than 25 years, attached hereto as exhibit "L." ("He is also a kind and loving father, devoted to his kids. He did not spoil them and he taught us to share").

- See letter from **Randall Lee Clements**, a lifelong friend of Mr. Torres's son, attached hereto as exhibit "M." ("He always treated me like his own and even gave me my first job in the summers organizing boxes in his warehouse . . . Ed is one of the best guys I know and considered him a second father to me. . . He's a good person and I would do anything for him and his family").

- See letter from **Richard Clements**, another lifelong friend of Mr. Torres' son, attached hereto as exhibit "N." ("[Mr. Torres] is a simple and laid back man, and very easy to talk to . . . I have a lot of respect for Mr. Torres, he was like a second father to me").

- See letter from **Rita Solis**, Mr. Torres' cousin, attached hereto as exhibit "O." ("Please take his health and character into consideration and I ask for your leniency").

- See letter from **Belford Rivas Rivera**, Mr. Torres' cousin, attached hereto as exhibit "P." ("His genuine, heartfelt determination to be present to protect his family and family values is second to none. Unfortunately, we have been witness to his seriously declining health").

## Request for Voluntary Surrender

At the time of Mr. Torres's guilty plea, the court announced its policy of requiring a defendant to be taken into custody immediately upon a sentence of incarceration, rather than allowing a self-surrender. We are asking the court to reconsider this policy with regard to Mr. Torres based on the hardship such policy will impose upon him.

Mr. Torres has significant medical issues as reflected in Paragraphs 81 through 88 of the Presentence Report. Not only would a denial of self-surrender lead to unnecessary cost to the government, which will have to expend significant money and manpower to transport him to his ultimate destination, but, more importantly, it will also result in considerable hardship to Mr. Torres resulting from extended stays in temporary holding facilities and lengthy transport to his eventual designated facility. It will also result in a denial of benefits to which Mr. Torres would ordinarily be entitled at his designated facility.

As the court knows, it generally takes approximately 30 to 45 days for the Bureau of Prisons to designate someone to an appropriate facility. If an individual is in custody during that period, he or she will remain at a local holding facility until such designation is made. Then, the Bureau of Prisons, at government expense, will have to arrange transportation from the local holding facility to the designated facility. That process can take weeks and numerous stays at county jails along the way. If Mr. Torres is able to self-surrender, he will be spared the indeterminate stay at a local facility and the government

will be spared the cost and trouble of transporting him to his permanent facility.[2] It will also save him the significant discomfort of being shuffled from place to place given his medical issues.

Of equal weight, and another significant reason for this request, is the fact that self-surrender will allow Mr. Torre's to be eligible for certain BOP administrative benefits to which he will not be entitled unless he self-surrenders. The Bureau of Prisons makes its facility designations, and security classifications within the facility, based on a variety of factors, each of which add or subtract points based on an inmate's offense, background, flight risk, and other factors. BOP Program Statement 5100.07 (Security Designation and Custody Classification Manual). The lower the point score, the better. One of the factors which mandates a three (3) point deduction is "Voluntary Surrender," which "applies only to **post-sentencing** voluntary surrender, and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing." Id. at Chapter 5, p. 13 (emphasis in original). Therefore, whether Mr. Torres voluntarily surrenders post-sentencing can have a profound impact on his custodial status; from the facility to which he is designated, to furloughs he might become eligible for, and even to the job within the facility to which he may be assigned.[3]

---

[2] According to Ellis, Federal Prison Guidebook, 2000 edition at 13: "Voluntary surrender to the designated institution rather than the U.S. marshal's office will lessen the trauma of your client going to jail. He or she will be spared the unpleasantness of being shackled and flying via "con air," the U.S. Marshal Service prisoner transport aircraft, or bused from facility to facility until reaching his or her final destination. This arduous process can often take weeks...."

[3] Id. "[A] voluntary surrender ordered by the sentencing judge is very important. A voluntary surrender lowers a defendant's security score (the lower the better)."

## **Conclusion**

It has been said that the first step toward rehabilitation is admitting one is wrong, together with affirmative action to remedy the situation. From the very beginning of this investigation, Mr. Torres has admitted his involvement in this matter, immediately pled guilty to Count 1 of the indictment, and bared his soul to the government in an attempt to atone for his conduct. He has furnished the government with all of the information he possesses concerning his activities and the activities of others and testified at the trial of his co-defendants. The government will recognize his contribution through the filing of a 5K1.1 motion for downward departure.

It is clear from the facts in this case that Mr. Torres is a good and decent man who used uncharacteristic bad judgment in involving himself in this matter. He has accepted responsibility for his conduct and assisted the government in its ongoing investigation. For these reasons, we submit that a lengthy sentence of incarceration is unnecessary and that, instead, the court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a).

Respectfully submitted,

RASKIN & RASKIN, P.A.
201 Alhambra Circle
Suite 1050
Coral Gables, Fl.  33134
Telephone: (305) 444-3400

/s/  Martin R. Raskin
Martin R. Raskin, Esq.
Florida Bar No. 315206
mraskin@raskinlaw.com

                                      LAW OFFICES OF BARRY M. BOREN
                                      9100 S. Dadeland Blvd., Suite 402
                                      Miami FL 33156
                                       (305) 670-2200 fax: (305) 670-5221

                                       */s/ Barry M. Boren*
                                       Barry M. Boren, Esq.
                                       Fla. Bar 247286
                                       barry@bboren.com

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on February 4, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

                                         /s/ Martin R. Raskin
                                         MARTIN R. RASKIN